UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Luigino's, Inc.,
a Minnesota corporation,

Plaintiff,

v.

Robert Peterson, individually, and
IBP, Inc., a Delaware corporation,

Defendants.

Civil No. 00-1246 (DWF/RLE)

**MEMORANDUM OPINION AND ORDER**

---

George G. Eck, Esq., Dorsey & Whitney, Pillsbury Center South, 220 South 6th Street, Minneapolis, Minnesota 55402; John Carver Richards, III, Esq., Trenti Law Office, 222 1st Street North, Suite 1000, Virginia, Minnesota 55792; David H. Simmons, Esq., Drage, deBeaubien, Knight, Simmons, Mantzaris & Neal, 332 Magnolia Avenue North, P.O. Box 87, Orlando, Florida 32802, appeared on behalf of Plaintiff.

Ronald J. Schutz, Esq., and Emmett J. McMahon, Esq., Robins, Kaplan, Miller & Ciresi, 2800 LaSalle Plaza, 800 LaSalle Avenue, Minneapolis, Minnesota 55402-2015, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on December 8, 2000, pursuant to Plaintiff's Motion for a Preliminary Injunction, Defendant's Motion for Leave to File Expert Witness Affidavit and Supplemental Briefing in Opposition to Plaintiff's Preliminary Injunction Motion, and Defendant's Motion to Exclude the Expert Affidavit of Gordon Wade. For the reasons set forth below, Defendant's Motion for Leave to File is granted, and both Plaintiff's Motion for Preliminary Injunction and Defendant's Motion To Exclude the Expert Affidavit of Gordon Wade are denied.

DEC 13 2000
FILED
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD
DEPUTY CLERK

## Background

Plaintiff Luigino's, Inc. (Luigino's) is a privately-owned Minnesota corporation of which the primary business is the wholesale production of frozen food entrees for retail sale. In 1998, Luigino's engaged in negotiations with Defendant IBP, Inc. (IBP), for the sale of Luigino's to IBP. IBP is involved primarily in the packaging of meat products for sale at grocery stores nationwide, and it is the parent corporation of numerous subsidiary corporations. Defendant Robert Peterson was and continues to act as the CEO and Chairman of the Board for IBP, and thus, was directly involved in the negotiations with Luigino's. Larry Shipley, the Chief Financial Officer of IBP, was also involved in the negotiations with Luigino's. While no agreement was ever reached, the parties continued to entertain possibilities through April 2000.

During the process of negotiating, Luigino's provided to IBP a Confidential Memorandum that provided an overview of the business, including its financial structure and potential growth opportunities. According to Plaintiff, a different memorandum would have been provided had the Defendants represented to the Plaintiff that they were in competition with each other.[1] Defendants contend that Plaintiff was well aware of the business ventures of IBP, including the presence of a subsidiary, Foodbrands - owner of Specialty Foods, Inc., involved in the retail frozen Mexican food market, and that any statement made to the contrary was in the limited context of a certain statutory regime that narrowly defines "competition."

In early 1999, having developed a collegial and friendly relationship with Jeno Paulucci, the owner and CEO of Luigino's, Defendant Peterson was appointed as a member of the advisory

---

[1] Plaintiff represented in the Affidavit of Ronald O. Bubar that a copy of the altered memorandum was attached as "Exhibit B." Bubar Aff., p. 7. However, the Court has yet to receive a copy of "the more limited version." *Id.*

board of directors for Luigino's, eventually to be named its vice chairman. During the course of his involvement on the board, Mr. Peterson was exposed to the intimate business plans of Luigino's, including discussions of potential product lines of Mexican and Southwestern frozen entrees, namely the "Howlin' Coyote" and "Carlos and Maria's" product lines.

In February 2000, Specialty Foods, Inc., the aforementioned subsidiary of IBP, launched "Jose Ole," a new product line of premium priced Mexican frozen entrees. Luigino's became aware of the product line through reports in a trade magazine, and it subsequently removed Mr. Peterson from the Board for his alleged breach of fiduciary duty, having failed to disclose his corporation's competitive endeavor. Defendants contend that Mr. Peterson was unaware of Specialty Foods' development and launching of the "Jose Ole" line until February 2000. Plaintiffs respond alleging that Mr. Peterson had to have been aware of "Jose Ole" and the relevant conflict given his directorial and financial responsibilities and his inevitable interactions with Larry Shipley, who sat on the board of Foodbrands and who also was intimately involved in the negotiations with Luigino's.

## Discussion

### 1. Defendants' Motion for Leave to File

Defendants' Motion for Leave to File Expert Witness Affidavit and Supplemental Briefing in Opposition to Plaintiff's Preliminary Injunction Motion is granted in part and denied in part. The Court will allow and consider the expert affidavit of Garry Birkhofer. Given the circumstances that resulted in its late filing, i.e. Mr. Birkhofer's family medical emergency, the Court finds that it would be unfair to penalize the parties for circumstances outside their control. The Court, however, denies Defendants' motion with respect to the Supplemental Memorandum. The Court has before it sufficient information to reach its decision and is confident that the

denied filings would not alter the result. The Court notes that Plaintiff submitted documents in response to Defendants' proposed Supplemental Memorandum, and the documents have been included in the docket. In keeping with this order, however, the Court declines to rely upon Plaintiff's documents submitted in response to Defendants' Supplemental Memorandum (Doc. Nos. 48, 49, & 50).

**2. Defendants' Motion to Exclude Expert Affidavit**

The admissibility of an expert's opinion, whether via direct testimony or affidavit, is evaluated in terms of its reliability, relevance, and overall helpfulness to the trier of fact. *See* Fed. R. Evid. 104 and 702. *See also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (holding that the Rules of Evidence, primarily 702 and 104, require the trial court to evaluate proposed expert testimony for reliable foundation and relevance to the task at hand). An individual's "knowledge, skill, experience, training, or education" can qualify him as an expert. Fed. R. Evid. 702. The Rules do not require that an expert's opinion be based upon firsthand knowledge or observation. *Daubert*, at 592. In general, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995) (quoting *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988)).

Defendants have requested that the Court exclude the expert affidavit of Gordon Wade. Defendants argue that Mr. Wade's testimony is neither reliable nor relevant to the issues before this Court because he did not perform his own independent investigation and research on the relevant products and, thus, relied upon "deficient facts" and "mistaken assumptions," i.e. the documents and information provided to him by Luigino's. Most notably, Defendants emphasize

Mr. Wade's failure to perform a "source of volume" analysis - a measuring tool used to determine consumer purchase patterns.

Mr. Wade is presented as an individual with extensive experience in the retail food industry. Such experience qualifies Mr. Wade as an expert in his field for purposes of testimony before this Court. The fact that he did not perform a source of volume analysis does not render his testimony useless. In fact, the evaluation of information through the lens of experience and specialized knowledge is a form of analysis which has consistently been deemed helpful by courts. Indeed, this fact appears to be acknowledged by the Defendants' use of their own expert, Mr. Birkhofer. The sufficiency of the information upon which Mr. Wade bases his opinions impacts the Court's measure of his credibility and not the admissibility of his testimony. Consequently, the Court declines to exclude the affidavit of Gordon Wade.

**3. Preliminary Injunction**

**a. Standard of Review**

Under Eighth Circuit precedent, a preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Publishing Co. v. Mead Data Central, Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986), *cert. denied*, 479 U.S. 1070 (1987). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

**b. Application**

**i. Likelihood of Success on the Merits**

Plaintiff claims that Defendants have usurped the corporate opportunity manifested by the launching of the "Jose Ole" line. Plaintiff advances three theories upon which it bases its claim. First, Plaintiff argues that the purported independent development of the "Jose Ole" line was inevitably tainted by the involvement of IBP's CFO Shipley who both had access to the "Confidential Memorandum" and had ongoing interactions with Foodbrands' management, including approval of project funding. Second, Plaintiff contends that Defendant Peterson breached his fiduciary duties as a Luigino's board member by prioritizing his loyalty to IBP over his loyalty to Luigino's, failing to disclose that his corporation was in "competition" with Luigino's, misusing confidential information regarding Luigino's and, ultimately, causing IBP to go into direct competition with Luigino's. In addition, Plaintiff contends that the manner in which Defendant Peterson regarded and carried out his responsibilities as a Luigino's board member resulted in IBP becoming a constructive member of the board - a result to which Luigino's alleges it would not have knowingly agreed. Third, Plaintiff contends that the Defendants made material misrepresentations to Luigino's by claiming that IBP was not nor ever intended to become a direct competitor of Luigino's, thereby inducing Luigino's to release the "Confidential Memorandum."

There is significant dispute between the parties as to the definition and scope of the term "competition" and to which products its principles should apply. Defendants contend that the outcome of this case should be the same whether the Court finds "competition" to be defined narrowly so that "Jose Ole" is in direct competition with "Howlin' Coyote" or more broadly so that "Jose Ole" is in competition with all of Luigino's frozen entrees. Defendants argue that the

result of a narrow definition would indicate that there is no violative competition because IBP made all necessary disclosures under a narrowly defined scheme. Alternatively, Defendants argue that if competition is to be defined more broadly, then Luigino's was aware of IBP's competitive products. Plaintiff's use of the term "competition" appears to vacillate over the course of the underlying events and throughout its arguments before the Court. Significant questions remain for the Court as to how competition should be or has been defined at relevant times by the parties, and the Court is unable to make relevant factual and legal findings on the issue at this time.

In addition, the Court finds the current evidence before it to be insufficient to establish a likelihood that Plaintiff will be able to demonstrate a causal link between any information that Mr. Peterson may have acquired as a member of the Luigino's board and any action thereafter that he may have directed or facilitated IBP to take. The Plaintiff has failed to point to any specific information within the "Confidential Memorandum" that could have been misused in the manner the Plaintiff contends. The Court is perplexed that, given the Plaintiff's allegations, there exists no information or even a reference within the Memorandum to current or potential Southwestern or Mexican products. Even if the misused information was obtained by Mr. Peterson during the course of board meetings, it is unclear to the Court what that information is and how it was misused.

Plaintiff has placed significant emphasis on the "inevitable disclosure" doctrine to establish the causal link between Defendant Peterson and the launching of "Jose Ole." In *PepsiCo., Inc. v. Redmond,* 54 F.3d 1262 (7th Cir. 1995), the court recognized and applied the doctrine where a former manager of PepsiCo.'s new age and sports drink division had accepted a nearly identical position with a rival conglomerate. The court reasoned that it was inconceivable

that the defendant could perform his new job responsibilities without relying on, or "inevitably disclosing," his knowledge of the strategic financial, production, and marketing plans of PepsiCo. to which he had been previously been privy and, therefore, should be enjoined from taking the new position for a certain amount of time. The case before this Court is different. Defendant Peterson is removed from the product development of Foodbrands and its subsidiary, Specialty Foods, and, thus, his purported disclosure or use of knowledge would have to have been calculated and deliberate. Plaintiff has not presented substantial evidence of such disclosure or use. Moreover, Plaintiff's alternative allegations that Mr. Shipley was responsible for the disclosure or misuse face the same obstacles of proof previously discussed and the additional obstacle of not having been named a defendant in this action.

The Court is troubled, however, by the evidence Plaintiff has presented to describe the manner in which Mr. Peterson carried out his fiduciary responsibilities to Luigino's, alleging a breach of those fiduciary responsibilities. Nonetheless, Plaintiff has not established a likelihood of proving that any of the alleged harm to Luigino's arose because of the purported breach. On the record before the Court, the Plaintiff has not demonstrated a likelihood of succeeding on the merits of the case.

**ii. Balance of Harms**

If the Court were to impose an injunction as Plaintiff has requested, then the current "Jose Ole" product line would remain on freezer shelves, and IBP would be enjoined from further expanding its reach into the frozen food market. The impact of such an injunction would likely be greater with respect to Specialty Foods than to IBP, given the subsidiary's substantial investment of finances and resources. While an injunction would not clearly impose a great hardship on IBP as the larger parent company, the balance does not necessarily tip in favor of

Luigino's. Plaintiff has not established irreparable harm nor a substantial threat to its ability to continue operating with financial success as a result of not issuing the injunction.

**iii. Public Interest**

Plaintiff has argued that the public interest in encouraging and enforcing fiduciary responsibilities justifies the imposition of an injunction. The Court agrees with such principles and is genuinely concerned about the implications raised by Plaintiff's evidence concerning Mr. Peterson's execution of his fiduciary duties. Nonetheless, Plaintiff has not established a clear link between Mr. Peterson's conduct as a Luigino's board member and the alleged harm that Luigino's has experienced. Without that link, the named public interest has markedly less influence in the Court's consideration.

**iv. Irreparable Harm**

The primary harm of which Plaintiff complains is a loss of profits and, if ultimately proven, can be compensated with money damages. However, Plaintiff also lists various other harms such as loss of goodwill, loss of reputation, loss of ability to compete, and incalculable loss of sales primarily due to the value attached to being the first product of its kind in the market. Defendants argue that any of the above-listed damages either do not exist or were a result of Plaintiff's own decisions to avoid and/or withdraw from the Mexican/Southwestern frozen food market. Plaintiff has alleged that the nearly simultaneous withdrawal from the market of "Howlin' Coyote," the reduction of "Michelina's" presence in certain markets, and the launching of "Jose Ole" are inevitably related. However, Plaintiff has failed to present specific evidence of such causation.

The evidence is undisputed that Luigino's "Howlin' Coyote" and "Michelina's" entrees were in the frozen entree market and "Howlin' Coyote" was in the Southwestern or

Mexican/Southwestern frozen entree market(s) before "Jose Ole" was launched. Moreover, it is clear that other factors such as additional competitors, i.e. Ortega, and Luigino's strategic marketing practices may have impacted the success of "Howlin' Coyote" and "Michelina's" products. Thus, the Court finds that Plaintiff has not established that such harms have occurred nor that they were a result of the Defendants' conduct. Such speculative harm does not justify the imposition of injunctive relief, and the Court declines to do so. *Ben-Yonatan v. Concordia College Corp.*, 863 F. Supp. 983, 986 (D. Minn. 1994).

**c. Conclusion**

Having evaluated each of the four factors individually and as a whole, the Court concludes that a preliminary injunction is not an appropriate remedy at this time. The evidence indicates that any damage that may ultimately be proven will be sufficiently compensable with money damages, and to impose the injunctive relief requested would result in unnecessary and undue hardship.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Leave to File Expert Witness Affidavit and Supplemental Briefing in Opposition to Plaintiff's Preliminary Injunction Motion is **GRANTED IN PART and DENIED IN PART** (Doc. No. 45).

   a. The Court grants leave to the Defendants to file the Expert Witness Affidavit of Gary Birkhofer (Doc. No. 47).

   b. The Court denies leave to the Defendants to file their Supplemental Briefing in Opposition to Plaintiff's Preliminary Injunction Motion.

2. Defendant's Motion to Exclude the Expert Affidavit of Gordon Wade is **DENIED** (Doc. No. 23).

3. Plaintiff's Motion for a Preliminary Injunction is **DENIED** (Doc. No. 26).

Dated: December 13th, 2000

DONOVAN W. FRANK
Judge of United States District Court