UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Luigino's, Inc.,

Plaintiff,

vs. ORDER

IBP, Inc. and
Robert Peterson,

Defendants. Civ. No. 00-1246 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 22nd day of March, 2001.

I. Introduction

On February 27, 2001, the Court heard argument on the Plaintiff's Renewed Motion for Leave to File an Amended Complaint, as well as the Defendants' Renewed Opposition to the Plaintiff's Amended Complaint.

At the time of the Hearing, the Plaintiff, Luigino's, Inc. ("Luigino's"), appeared by James D. Kremer, David H. Simmons, and J. Carver Richards, III, Esqs.; and the Defendants, IBP, Inc., and Robert Peterson (collectively "IBP" or, individually, "Peterson"), appeared by Emmett J. McMahon, Esq.

For reasons which follow, we grant, in part, Luigino's Motion for Leave to File an Amended Complaint and, obversely, we deny, in part, IBP's Opposition to Luigino's Amended Complaint.

MAR 23 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

86

## II. Procedural History

In an Order dated December 29, 2000, we denied Luigino's Motion to file an Amended Complaint, that would assert a claim for fraud and misrepresentation, because the proposed pleading did not comport with Rule 9(b), Federal Rules of Civil Procedure, which requires that fraud be pled with particularity. We granted Luigino's approximately one and one-half weeks, however, to reframe the Amended Complaint, in order that it would comply with the Rule. In accordance with our Order, Luigino's filed a renewed Amended Complaint on January 8, 2001. Thereafter, also in accordance with our Order, IBP renewed its opposition to the Amended Complaint, contending that the claim of fraud was still not pled with the requisite particularity, and that Luigino's claim for negligent misrepresentation was futile under Minnesota law. Luigino's now asks that it be allowed to file the Amended Complaint, or that, if we find that the fraud claim is still without sufficient particularity, we grant them leave to try again.

## III. Discussion

Where, as here, a Plaintiff seeks to amend its Complaint, Rule 15(a), Federal Rules of Civil Procedure, dictates that leave to amend shall be "freely given when justice so requires." DeRoche v. All American Bottling Corp., 38 F. Supp.2d 1102, 1105-06 (D. Minn.

1998). The Supreme Court has explained the purposes of Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of such an apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. -- the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); see also, ARE Sikeston v. Weslock National, Inc., 120 F.3d 820, 832 (8th Cir. 1997); Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989).

Although we begin with a presumption of liberality, the right to amend is not absolute, see, Floyd v. State of Missouri Dept. of Social Services, Div. of Family Services, 188 F.3d 932, 939 (8th Cir. 1999), and an amendment to a pleading can be successfully challenged on the grounds of futility if the claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted. See, Becker v. Univ. of Nebraska at Omaha, 191 F.3d 904, 908 (8th Cir. 1999); Humphreys v. Roche Biomedical Laboratories, Inc., 990 F.2d 1078, 1082 (8th Cir. 1993); Weimer v. Amen, 870 F.2d 1400, 1407 (8th Cir. 1989); Holloway v. Dobbs, 715 F.2d 390, 392-93 (8th Cir. 1983); but cf., Karl's Inc. v. Sunrise Computers, Inc., 901 F.2d 657, 660

(8th Cir. 1990)("colorable showing" sufficient to withstand application of clearly frivolous rule).

A. IBP's Contention that Luigino's has Failed to Plead Fraud with Particularity.

As noted, Luigino's seeks leave to amend its Complaint so as to add a Count for fraud and misrepresentation. Rule 9(b), Federal Rules of Civil Procedure, provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "'Circumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Commercial Property Investments, Inc. v. Quality Inns International, Inc., 61 F.3d 639, 644 (8th Cir. 1995), quoting Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir. 1982), adhered to on reh'g, 710 F.2d 1361 (8th cir. 1982), cert. denied, 464 U.S. 1008 (1983); see also, Roberts v. Francis, 128 F.3d 647, 650 (8th Cir. 1997)("These 'circumstances' include the time, place, and contents of the alleged fraud; the identity of the persons allegedly committing fraud; and what was given upon or obtained by the alleged fraud."). Of course, "one of the main purposes of the rule is to facilitate [the opponent's] ability to respond and to prepare a defense to charges of fraud," and "conclusory allegations that a [party's]

conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Id.

IBP contends that Luigino's revised, Amended Complaint still does not satisfy the specificity requirements that are imposed by Rule 9(b), and that were reiterated in our prior Minute Order. Specifically, our Order stated:

> The allegations, for the most part, are open-ended, and conclusory. They do not identify the statements that are allegedly false or misleading, do not identify the parties involved in making or receiving the statements, and do not so much as suggest why the statements are either material, or are of a type that properly bear reliance.

Luigino's, Inc. v. IBP, Inc. and Robert Peterson, Minute Order, dated December 29, 2000, at 4.

IBP argues that, even as amended, Luigino's allegations of fraud and misrepresentation are still wanting, particularly since the Amended Complaint does not identify what was obtained as a result of the purported fraud -- that is, why the allegedly fraudulent statements were material. See, Defendants' Renewed Opposition to Plaintiff's Motion to Amend, at 2.

The pertinent portion of Luigino's newly filed Amended Complaint is Count VI - Fraud and Misrepresentation. Admittedly, the reframed allegations do contain more information regarding the who, what, where, and when, of the allegedly fraudulent statements, for the Amended Complaint now sets forth the circumstances of the al-

legedly fraudulent statements, including dates, places, and the parties involved on both sides, as well as the content of the statements. See, Proposed Amended Complaint, at ¶66. Moreover, the Amended Complaint represents that the statements were materially false and misleading because IBP failed to disclose that they were in the process of developing, testing, and marketing, a new frozen food entree, that would be competitive with Luigino's -- thereby inducing Luigino's to disclose confidential business information as to its "core business of developing, producing, marketing, and selling retail branded frozen food entrees and information regarding Luigino's present and future business plans." Id. at ¶67. Finally, Luigino's Amended Complaint alleges reliance by stating as follows:

> Plaintiff reasonably, materially and detrimentally relied upon the Defendants' materially false statements, to wit:
>
> a. Plaintiff provided Defendants with confidential information regarding Plaintiff's core business of developing, producing, marketing, and selling retail branded frozen food entrees and its present and future business plans during the course of negotiations for IBP's potential purchase of Luigino's. Such information included highly sensitive and confidential details of the operations, marketing efforts, finances, and administration of Luigino's and extensive confidential information concerning Luigino's present and future business plans, including its plans for its existing *Michelina's* line of frozen food entrees, its plans to market the *Howlin' Coyote* brand

> of frozen food entrees, and its planned *Carlos & Maria's* line of frozen food entrees. This confidential and trade secret information was only provided to the Defendants based upon such misrepresentations, and was not provided other potential purchasers of Luigino's that disclosed that they were in the retail branded frozen entree business.
>
> b. Peterson (and constructively and actually IBP, through Peterson's service on Luigino's Board of Directors for the benefit and to serve the interests of IBP) became and was admitted and then maintained as a member of Luigino's board of directors, and ultimately became the Vice Chairman of Luigino's board of directors. While serving on the board of directors Peterson, and thus IBP, obtained Luigino's highly sensitive and confidential information concerning the operation, marketing efforts, finances, and administration of Luigino's including extensive confidential information concerning Luigino's *Michelina's* line of frozen entrees, its *Howlin' Coyote* line of frozen entrees, and its planned line, *Carlos & Maria's*.

Id. at ¶69.

IBP contends that this recitation is still not adequate, under Rule 9(b), stating that "[c]reating a litany of broad types of information, without explaining what was confidential about those types of information, does not substitute for the Court's specific order to identify what was obtained." Defendants' Renewed Opposition, at 3. Thus, IBP argues that Luigino's has yet to identify the "circumstances" of the fraud. We agree.

In, at best, a token effort, Luigino's has simply identified broad categories of information which, it contends, IBP acquired as

a result of its alleged fraud and misrepresentation. Such a non-specific categorization, however, does nothing to assist either IBP, or the Court, in understanding what it was that IBP wrongfully misappropriated from Luigino's. While we recognize that those, who surreptitiously garner proprietary information from others, may not maintain a catalogue of the information so obtained, here, IBP has no means of gleaning, from the boundless information in Luigino's possession, what IBP is purported to have usurped by fraudulent means. In reality, Luigino's newly proposed allegation does nothing to narrow the potential universe of information, if any, that IBP purportedly misappropriated. To baldly allege that IBP expropriated proprietary information in Luigino's possession is plainly not sufficient. Surely, if an expropriation occurred, Luigino's is well-positioned to identify what was expropriated.

Say, for example, Luigino's had evidence that IBP commandeered a proprietary recipe, a secret combination of ingredients, a keenly effective advertising approach, or a cost-effective mode of product distribution, or product preparation. By identifying the information so purloined, IBP would properly be given notice of the accusations against which it must defend. To the contrary, given the limitless expanse of Luigino's newly proposed allegations, IBP is forced to speculate as to the information that was purportedly misappropriated by IBP's alleged fraud and misrepresentation. The

particularity requirements of Rule 9(b) would be wholly ineffectual if nonspecific allegations of fraud -- such as those Luigino's proposes here -- are allowed to suffice.

While Luigino's has requested yet another opportunity to re-frame its Amend Complaint, we are presented with no suggestion that the particularity, which Rule 9(b) requires, could here be satisfied. Notwithstanding IBP's specific complaints about the generality of Luigino's newly rephrased Complaint, Luigino's has not suggested, let alone identified, how it would be able to particularize the alleged fruits of IBP's fraud and misrepresentation. We decline to engage in another round of thrust and parry. If Luigino's had knowledge of the specific information which IBP is alleged to have expropriated then, we conclude, Luigino's would have incorporated that information into its Amended Complaint.[1]

---

[1]In no small part, we draw this conclusion from our pointed criticism of Luigino's original fraud and misrepresentation claims. As we stated, in our Minute Order of December 29, 2000:

> [N]otwithstanding the counsel of experienced lawyers, the allegations of fraud, which Luigino's proposes, palpably fail in their particularity. The failings are so striking, that we are given pause that the allegations were intended to do little more than draw a potentially affrontive allegation before the factfinder as a tagalong claim. We concede, however, that the proposed allegations are presently so wanting that we reserve judgment as to their substance. Should are initial

(continued...)

Our prior Order made plain the deficiencies of Luigino's original Complaint, and specifically identified what would be expected of any amended pleading. Having failed to particularize its fraud allegations, we conclude that "enough is enough," and that this case should proceed sans fraud and misrepresentation claims which are fatally nonspecific.

B. IBP's Contention that Luigino's Cause of Action for Negligent Misrepresentation is Futile, under Minnesota Law.

IBP urges that Luigino's effort to amend, so as to allege a negligent misrepresentation claim, should be denied as futile. As we have previously observed, an amendment to a pleading can be successfully challenged on the grounds of futility if the claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted. IBP claims that, under Minnesota law, there is no cause of action for negligent misrepresentation when the parties were acting at arm's length. See, Defendants' Renewed Opposition, at 5, citing Safeco Ins. Co. of Am. v. Dain Bosworth, Inc., 531 N.W.2d 867 (Minn.App.

---

[1](...continued)

> foreboding prove correct, we are not powerless to act.

Our initial foreboding has not been disquieted by Luigino's second effort to properly plead a claim for fraud and misrepresentation, and we are presented with no showing that a proper pleading could be forthcoming.

1995), rev. denied, (Minn. July 20, 1995); Smith v. Woodwind Homes, Inc., 605 N.W.2d 418, 424 (Minn.App. 2000).

Luigino's has asserted claims for both intentional misrepresentation, and negligent misrepresentation. "Persons making representations are negligent when they have not discovered or communicated certain information that the ordinary person in his or her position would have discovered or communicated." Safeco Ins. Co. of Am. v. Dain Bosworth, Inc., supra at 870. In Safeco, the Minnesota Court of Appeals held that there is no cause of action for negligent misrepresentation between parties negotiating a deal at arm's length, because there is no duty owed in such an instance, unless there is a special relationship between the parties justifying such a duty. Id. at 871-72. Rather, in such an instance, an injured party's remedy is to sue either for breach of contract, or for intentional misrepresentation. Id.

Based upon the holding in Safeco, IBP contends that Luigino's cannot claim negligent misrepresentation, because the transaction between the parties, which generated the claim, was at arm's length. Luigino's points to the Court's qualifier, however, which caveats that "one making representations is held to this duty of care [for negligence] when supplying information for the guidance of others in the course of a transaction in which one has a pecuniary interest, or in the course of one's business, profession or

employment." Id. When making this statement, however, the Court was referring to parties who are "engaged in the business or profession of supplying guidance to others, rather than those who are engaged in a commercial transaction at arm's length." Id. at 871, citing Onita Pac. Corp. v. Trustees of Bronson, 843 P.2d 890, 897 (Or. 1992)("adversarial parties negotiating at arm's length to further their own economic interests" do not owe a duty); Meier v. Alfa-Laval, Inc., 454 N.W.2d 576, 581 (Iowa 1990); Moorman Mfg. Co. v. National Tank Co., 435 N.E.2d 443, 452 (Ill. 1982)(cause of action for negligent misrepresentation limited to situations where "one who is in the business of supplying information for the guidance of others in their business transactions makes negligent misrepresentations.").

At least to some extent, the Court, in Safeco, addressed the Plaintiff's argument. There, the plaintiff argued that there was a genuine issue of material fact as to whether the defendant undertook a duty by providing any information to the plaintiff. Safeco Insurance Co. of Am. v. Dain Bosworth, Inc., supra at 872. However, as the Court underscored, a cause of action for negligent misrepresentation does not encompass any information exchanged in business negotiations, or else every such negotiation would be subject to a negligent misrepresentation claim. In the words of the Court:

> It would be unreasonable to impose a duty whenever a party gives any information to another party. That is why the law of negligent representation imposes a duty on parties providing information for the guidance of others in the course of business or where there is a pecuniary interest. In other commercial relationships, for example between parties to a contract, the aggrieved party is limited to suit in contract or in fraud.

Id. at 873.

In the alternative, Luigino's argues that a confidentiality agreement, between Luigino's and IBP, created a fiduciary relationship, which would properly undergird the prosecution of a negligent misrepresentation claim. For the proposition, that a confidentiality agreement creates a fiduciary relationship, Luigino's relies on C&F Packing Co., Inc. v. IBP, Inc., 224 F.3d 1296 (Fed. Cir. 2000); Richardson v. Suzuki Motor Co., Ltd., 868 F.2d 1226 (Fed. Cir. 1989); and Den-Tal-Ez, Inc. v. Siemans Capital Corp., 566 A.2d 1214 (Pa. Super Ct. 1989). None of these cases are apposite, however. For the most part, Luigino's has extracted single passages in these three different cases which allude to a fiduciary relationship as arising from a form of confidentiality agreement. Notably, none of the cases reference Minnesota law, and none of them specifically addresses whether a confidentiality agreement creates a fiduciary relationship.

In Richardson v. Suzuki Motor Co., supra at 1243-45, the Court considered whether certain technical information, that was dis-

closed by the inventor plaintiff to the defendant motor vehicle manufacturer, qualified for trade secret protection under California law. Under the laws of California, one of the requisites for trade secret protection is either a confidential relationship, or a covenant. Id. at 1244. The Court found that the Plaintiff met the requirement through a "contractual covenant." Id. Thus, it appears that the Court was relying on the contractual nature of the parties' agreement, rather than a confidential agreement.

In C&F Packing, Inc. v. IBP, Inc., supra at 1305-06, the Court was addressing an issue similar to that considered in Richardson, but under the trade secret laws of Illinois. In discussing whether the Plaintiff should be awarded prejudgement interest, the Court stated:

> In Richardson, the inventor had entered into a one year Option and License Agreement with Suzuki, which included confidentiality provisions. Thus, Suzuki had been in a fiduciary relationship with the inventor * * *.

Id. at 1305.

Such a conclusion should not be surprising, however, as the parties in Richardson had entered into an Option and License Agreement, which included a confidentiality provision. In contrast, here the only agreement presented is a confidentiality agreement. Moreover, C&F Packing did not analyze the issue under Minnesota law, and was not considering a negligent misrepresentation claim.

Finally, in Den-tal-ez v. Siemens Capital Corp., supra, the Court applied New York law. The case involved a Mutual Non-Disclosure Agreement and, at one point, the Court observed:

> With the factual scenario in place, we now proceed to the trial court's numerous conclusions of law, upon which the court based its decision to issue the permanent injunction herein. Those conclusions may be reduced to the following fundamental propositions:
>
> 1. Siemens and Star were in a confidential relationship implied in law and expressly created by the Mutual Non-Disclosure Agreement.

Id. at 233.

Again, though, the Court was not applying Minnesota law, and was not directly ascertaining whether the confidentiality agreement created a fiduciary relationship, for the purposes of a negligent misrepresentation claim.

More importantly, the reasoning in Safeco militates against Luigino's argument. There, the Court held, in essence, that a plaintiff, in an arm's length transaction, was not at liberty to plead every conceivable cause of action. Rather, in such cases, where the parties are in an arm's length transaction, they must either rely on a breach of contract, or on an intentional misrepresentation claim, in order to remedy any wrongdoing in the nature of negligent misrepresentation. Here, Luigino's has pled both causes of action as arising out of the confidentiality agreement. Allow-

ing Luigino's to append a further claim for negligent misrepresentation would merely pile on an overlapping request for relief, which is precisely the improvidence that Safeco was intended to cure. Accordingly, we find that Luigino's proposed negligent misrepresentation claim, either against IBP or Robert Peterson, for the statements, or absence of statements, during the time in which there existed no fiduciary duty between them, is futile under Minnesota law.[2]

Here, Luigino's fraud and misrepresentation accusations encompass the time prior to when Peterson joined Luigino's Board of Directors -- a position which could have imposed a fiduciary duty on Peterson at that point -- with but one exception. As pled, one of the purportedly fraudulent statements -- the statement on a questionnaire -- occurred in January of 1999, after Peterson joined Luigino's Board of Directors. Therefore, in regard to that one

---

[2]Luigino's contends that once Robert Peterson joined the Board of Directors, he and IBP had a retrospective duty to speak, so as to correct any misinformation that had been given to Luigino's during the time in which the companies were negotiating a transaction, but before a fiduciary relationship was formed between them. Luigino's cites no authority for that proposition, however, and we conclude that, left unrestrained -- as it has been proposed by Luigino's -- the rule would subject any newly appointed board member to an unworkable duty to ferret out any information which, conceivably, could be regarded by the company, of which the individual is now a board member, as being something less than wholly forthright. The alternative would be to flood the Courts with purported actions for negligent misrepresentation.

statement, Luigino's will be allowed to plead a negligent misrepresentation claim. Moreover, since Luigino's alleges that Peterson was sitting on the Board of Directors, as a representative of IBP, the negligent misrepresentation claim as to this sole statement will also lie against IBP. See, e.g., Bentz v. Vardaman Manufacturing Co., 210 So.2d 35, 40 (Miss. 1968).

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiff's Motion to Amend the Complaint [Docket No. 68] so as to more particularly plead a fraud and misrepresentation claim is DENIED, but is GRANTED as to the sole negligent misrepresentation claim that is identified in the text of this Order.

2. That, as more fully explained in the text of this Order, the Defendants' Renewed Motion in Opposition to the Plaintiff's Proposed Amended Complaint [Docket No. 67] is GRANTED in part, and DENIED in part.

3. That, forthwith, the Plaintiff shall serve and file a Second Amended Complaint which will conform to the rulings contained in this Order.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE