UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Luigino's, Inc.,

Plaintiff,

vs. ORDER

IBP, Inc. and
Robert Peterson,

Defendant. Civ. No. 00-1246 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 2nd day of July, 2001.

I. Introduction

On June 14, 2001, the Court heard argument on the Defendants' Motion to Compel Production of Documents. At the time of the Hearing, the Plaintiff Luigino's, Inc. ("Luigino's) appeared by David H. Simmons, Esq.; and the Defendants IBP, Inc., and Robert Peterson (collectively "IBP"), appeared by Rita Coyle DeMeules, Esq. For reasons which follow, we grant the Defendants' Motion, but only in part.

The parties appear to have worked out a number of their disputes. As related at the Hearing, Luigino's has produced all the documents it provided to its experts, except for the documents withheld on the basis of privilege; it has produced all of the documents identified in the deposition of Charles Pountney, except

(112)

FILED JUL 02 2001
RICHARD D. SLETTEN, CLERK
JUDGEMENT ENTERED_______
DEPUTY CLERK'S INITIALS F.H.

for the electronic mails that it contends it cannot retrieve; and the parties have resolved their dispute concerning the untimeliness of Luigino's responses to IBP's discovery requests, except to the extent of the request pertaining to the Budget Gourmet transaction between Luigino's, and Heinz; and to whether Luigino's has produced its supplemental privilege log, and the Goldsmith, Agio, Helms & Company privilege log. We address the remaining issues, as they were raised at the Hearing.

II. Discussion

A. Budget Gourmet Documents Involved in the Transaction Between Luigino's and Heinz.

IBP has requested all documents which relate to Luigino's acquisition of "Budget Gourmet." Luigino's is withholding a number of these documents, claiming that they are "trade secrets." In addition, Luigino's believes that these documents are not relevant to the present case, as the Budget Gourmet transaction occurred between three to six months before the times pertinent to this action. As proof of the irrelevance of these documents, Luigino's points to a decision, by the United States District Court for the Western District of Pennsylvania, which quashed a Subpoena that was served by IBP, upon third-party Heinz. See, Luigino's, Inc. v Robert Peterson, Civ. No. 01-108, Order (W.D. Penn. June 4, 2001),

Exhibit 13 attached to Plaintiff's Authority in Response to Defendants' Motion to Compel Production of Documents.

In pertinent part, the Court stated:

> I find that much of what the subpoena requires Heinz to divulge is sensitive proprietary information Heinz should not be required to divulge; that much of the information can be obtained from Plaintiff; and that the subpoena requests would subject Heinz to an undue burden.

Id.

In contrast, IBP contends that the documents are relevant, as they go to causation and damages. Specifically, IBP is looking for information regarding Luigino's business outlook, as Luigino's is claiming that IBP's actions seriously crippled its business. Thus, IBP claims that the Budget Gourmet transaction documents may shed light on that issue.

First, we recognize that there is a Protective Order filed in this case and, therefore, Luigino's attempt to withhold these documents, on the basis that they constitute trade secrets, has no appreciable merit. The issue presented is precisely the type of circumstance that is addressed by the parties agreed-upon Protective Order. While the District Court, for the Western District of Pennsylvania, did quash the Subpoena IBP issued to third-party Heinz, we do not construe that Order as deciding whether Luigino's is obligated to produce the documents, in its possession, to IBP.

Rather, it appears to us, that the Court left that issue to this Court. Finally, we agree with IBP that the Budget Gourmet documents are relevant to this action, in that they will potentially permit IBP to test Luigino's attribution of damages caused by IBP, as opposed to damages inflicted by the acts of third parties. Thus, we grant IBP's Motion to Compel the production of documents related to the Budget Gourmet transaction.

B. Documents Not Produced But Which Were Reviewed By Luigino's Expert Gordon Wade.

IBP contends that Luigino's has failed to produce a document, identified as the "8/1/00 Meeting Book," which was allegedly relied upon by Luigino's expert, Gordon Wade ("Wade"), and which was identified in Wade's expert report, under the heading of "Primary Data Relied Upon." Luigino's claims that the document is privileged on attorney-client grounds.

Assuming that the document is attorney-client privileged, for argument's sake, IBP contends that the privilege was waived when the document was produced to Wade, and it cites a number of cases, and Rule 26(a)(2)(B),[1] Federal Rules of Civil Procedure, to sup-

---

[1]Rule 26(a)(2)(B) provides, in pertinent part:

> The [expert] report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in

(continued...)

port the proposition. As the Advisory Committee Notes to the 1993 Amendments to Rule 26(a)(2) explain:

> The [expert] report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions -- whether or not ultimately relied upon by the expert -- are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

As already noted, IBP has cited numerous rulings, decided after the 1993 Amendment to the Federal Rules, which require disclosure of assertedly privileged information, when that information was intentionally provided to an expert, even if he did not ultimately consider the privileged material in rendering his opinion. See, TV-3, Inc. v. Royal Ins. Co. of Am., 193 F.R.D. 490, 492 (S.D. Miss. 2000); Johnson v. Gmeinder, 191 F.R.D. 638, 647 (D. Kan. 2000); Musselman v. Phillips, 176 F.R.D. 194, 199 (D. Md. 1997); B.C.F.

---

(...continued)

> forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of all other cases in which the witness has testified as an expert at trial or by deposition within the preceding ten years.

Oil Refining, Inc. v. Consolidated Edison Co., 171 F.R.D. 57 (S.D.N.Y. 1997); Karn v. Rand, 168 F.R.D. 633 (N.D. Ind. 1996); Furniture World, Inc. v. D.A.V. Thrift Stores, Inc., 168 F.R.D. 61, 62 (D.N.M. 1996); United States v. City of Torrance, 163 F.R.D. 590 (C.D. Cal. 1995); see also 8 Wright et al., Federal Practice and Procedure §2016.2, at 250-52 (1994)("[W]ith respect to experts who testify at trial, the disclosure requirements of Rule 26(a)(2), adopted in 1993, were intended to pretermit further discussion and mandate disclosure despite privilege."); but see, Krisa v. Equitable Life Assurance Society, 196 F.R.D. 254 (M.D. Penn. 2000)(distinguishing between ordinary work product, which is discoverable when turned over to an expert, and attorney work product, which is not discoverable); Haworth, Inc. v. Herman Miller, Inc., 162 F.R.D. 289 (W.D. Mich. 1995)(same).[2]

Based upon the weight of authority, and the fairness issue which would arise, if IBP could not access all of the data employed by Wade to compile his report so as to test Wade's opinions, we conclude that, if the document in contention was considered by Wade, in compiling his expert report, then any privilege which

---

[2]Luigino's has also cited a number of cases for the proposition that, even where privileged documents were intentionally provided to experts, assertedly for their consideration, that the privilege is not waived, but none of those cases were decided after the operative amendment to the Federal Rules of Civil Procedure.

would otherwise attend the documents is waived, and the documents should be disclosed. Any other recourse would allow Luigino's experts an advantage -- they could express opinions after considering information, or factors, which were unavailable to IBP solely because of a spurious assertion of legal privilege.

Luigino's asserts, however, that the document was provided to Wade inadvertently, and that Wade did not consider the document in rendering his opinion. In addition, Wade has averred that he did not consider the document, in rendering his opinions, although he did list the document in the "Primary Data Relied Upon" section of his report. See, Affidavit of Gordon Wade in Opposition to Defendants' Motion to Compel, at ¶¶2, 4 and 5. In particular, Wade states:

> Although I briefly paged through these three (3) pages, I did not read [illegible] pages for content, and such pages did not present any substantive information [illegible] which I relied in preparing or forming any of my opinions in this case.

Id. at ¶4.

We have conducted an in camera review of this document, and we conclude that the document does not have any apparent bearing on Wade's expert report, and that it appears to have no relation to the opinions Wade has expressed. Thus, we conclude that the document was inadvertently provided to Wade and, therefore, the document does not need to be produced to IBP. See, Starway v. Inde-

pendent Sch. Dist. No. 625, 187 F.R.D. 595 (D. Minn. 1999)(applying a "middle of the road" approach to issues of inadvertent disclosures, and taking into account five considerations: "the reasonableness of precautions taken to prevent inadvertent disclosure in light of the extent of document production;" "the number of inadvertent disclosures"; "the extent of the disclosures;" "the promptness of measures taken to remedy the problem;" and "whether justice is served by relieving the part of its error."). Accordingly, we deny IBP's Motion to Compel the production of this document.

D. Remaining Documents Withheld on the Basis of Privilege.

Lastly, IBP seeks the production of communications between Luigino's, and the Dorsey & Whitney lawyers -- inclusive of William Hippee ("Hippee") -- who have advised them on certain matters in the past. This issue was previously drawn to our attention in March of 2001, but we directed the parties to "meet and confer" in an attempt to resolve the dispute, however, they were unable to reach an accord.

IBP contends that Peterson joined the Luigino's Board of Directors on January 5, 1999, and was there until April 19, 2000. Therefore, IBP seeks the production of all communications, between Luigino's and Hippee specifically, or to the Dorsey & Whitney law firm generally, during Peterson's tenure as a Board member. IBP

contends that a Director is entitled to discovery of privileged communications, which were made during the time that he was a Director, and it has cited a number of cases to support the proposition. See, Wechsler v. Squadron, Ellenoff, Pleasent & Sheinfeld, LLP, 994 F. Supp. 202, 211-12 (S.D.N.Y 1998), and cases cited therein; Moore Bus. Forms, Inc. v. Cordant Holding Corp., 1996 WL 307444, at *4 (Del. 1996); Gottlieb v. Wiles, 143 F.R.D. 241 (D. Colo. 1992); Kirby v. Kirby, 1987 WL 14862, at *7 (Del. Ch. July 29, 1987).

Luigino's counters, though, with cases that hold that individual members of a Board of Directors are without power to waive the corporation's privilege against the wishes of the majority of the corporation's Board of Directors. See, Tail of the Pup, Inc. v. Webb, 528 So.2d 506 (Fla. Dist. Ct. App. 1988); Milroy v. Hanson, 865 F. Supp. 646 (D. Neb. 1995).

In considering the issue of who may waive the attorney-client privilege, or who the privilege may be asserted against in the context of corporate law, the Court, in Milroy, decided that the client is the corporation, and not the individual members of the Board of Directors. See, Milroy v. Hanson, supra at 649. While it is true that a corporation is run by its Board of Directors, the Court reasoned that the deciding factor should be who was in control since, "when control of a corporation passes to new management, the

authority to assert and waive the corporation's attorney-client privilege passes as well." Id., citing Commodity Futures Trading Comm. v. Weintraub, 471 U.S. 343, 348-49 (1985). Thus, under Milroy, an individual minority Director cannot waive the attorney-client privilege for the corporation and, therefore, a corporation may assert that privilege against its own Director.

The decision in Milroy -- that the corporation may assert the attorney-client privilege against its Director -- is in conflict with the holding in Kirby v. Kirby, supra, where the Court determined that the Directors of a corporation should be treated as "joint clients" when legal advise is rendered and, consequently, the attorney-client privilege cannot be asserted against such individuals. Id. at *6. The Milroy Court concluded that the flaw in the reasoning of decisions, such as Kirby, rested in the fact that the "collective corporate client" may take a position adverse to management on issues of attorney-client privilege. Id.; see also, Tail of the Pup, Inc. v. Webb, 528 So.2d 506 (Fl. Ct. App. 1988).

We find Milroy, and Tail of the Pup, to be inapposite, however, as, in both cases, the individuals seeking to obtain the documents were the Plaintiffs in the actions, and they had filed their suit "in major part, to benefit [themselves]." Milroy v. Hanson, supra at 650. Here, however, we are presented with circumstances which the Court, in Milroy, discussed as follows:

> [T]his is not a case predicated upon [state] corporate law regarding whether Milroy, as a member of Sixth Street's board of directors, has some right to examine corporate documents in his role as a corporate director. He has filed suit, in major part, to benefit himself. He does not contend that under [state] corporate law he has some entitlement to documents in his fiduciary role as a corporate director. Furthermore, he has made no showing that he wants the documents to fulfil his fiduciary duty to Sixth Street and all its shareholders, as opposed to using the documents to further his personal goals in this litigation.

Id. at 650.

Here, however, Peterson has been sued by Luigino's for actions he assertedly took while sitting on the Board of Director's of Luigino's. He would not seek these documents -- at least as far as we can tell -- if he had not been sued by the corporation he served. Rather, he seeks to defend himself against an assertion that he breached his fiduciary duty to the very corporation he served. We cannot conceive of a way that Peterson can effectively defend himself, unless he has access to the documents that others, who served with him on the Board of Directors, were able to review. To hold otherwise would be to fetter Peterson's defense to such an extent as, potentially, to concede his liability to Luigino's -- a result that is abhorrent to common notions of due process. Therefore, we

grant IBP's Motion to Compel in this respect.[3]

NOW, THEREFORE, It is --

---

[3]IBP also seeks an Order from the Court, which would direct Luigino's to fully respond to all of the outstanding discovery. In contrast, Luigino's asserts that it has fully responded, and that it has supplemented its discovery responses as necessary. As we have advised the parties, and as we have previously expressed:

> [A]s a matter of practical reality, the Court must accept, at face value, a party's representation that it has fully produced all materials that are discoverable. See, [Marvin] Lumber v. PPG Industries, Inc., 168 F.R.D. 641, 643 n. 1 (D. Minn. 1996). As we have stated elsewhere, "we have no means to test the veracity of such avowals, other than to appropriately sanction a recalcitrant party for failing to responsibly honor its discovery obligations." Id. It continues to be our view that the failure to produce evidence, without just cause, which is relevant within the context of Rule 26, Federal Rules of Civil Procedure, bears a close relationship to the "spoliation of evidence," and should be sanctioned accordingly. See, Id., citing, Sylla Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 280 (8th Cir. 1995), cert. denied, --- U.S. ---, 116 S.Ct. 84 (1995); Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263, 267 (8th Cir. 1993); SDI Operating Partnership, L.P. v. Neuwirth, 973 F.2d 652, 655 (8th Cir. 1992); Scout v. City of Gordon, 849 F. Supp. 687, 690-91 (D. Neb. 1994); Capallupo v. FMC Corp., 126 F.R.D. 545, 551 (D. Minn. 1989); cf., Baker v. General Motors Corp., 86 F.3d 811, 817 (8th Cir. 1996), cert. granted, --- U.S. ---, 117 S.Ct. 1310 (65 USLW 3647 (U.S., March 24, 1997).

Onwuka v. Federal Express Corp., 178 F.R.D. 508, 514 (D. Minn. 1997); Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 637 (D. Minn. 2000).

ORDERED:

That the Defendants' Motion to Compel [Docket No. 101] is GRANTED, in part, and DENIED, in part, as more fully explained in the text of this Order.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE