UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Luigino's, Inc.,

Plaintiff,

vs. ORDER

IBP, Inc. and
Robert Peterson,

Defendant. Civ. No. 00-1246 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 25th day of July, 2001.

I. Introduction

On July 19, 2001, the Court heard argument on both the Plaintiff's, and the Defendants' Motions to Compel. At the time of the Hearing, the Plaintiff Luigino's, Inc. ("Luigino's), appeared by David H. Simmons, Esq., and the Defendants IBP, Inc., and Robert Peterson (collectively, "IBP"), appeared by Keiko L. Sugisaka, Esq. For reasons which follow, we grant in part, and deny in part, the Plaintiff's Motion to Compel, and we grant the Defendants' Motion to Compel. We further direct the parties to "meet and confer" regarding two other issues which were raised during the Hearing.

II. Discussion

The parties have apparently resolved the majority of the disputes which were originally addressed in their Motions to Compel

FILED JUL 25 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

and, therefore, we address only those issues which were argued at the Hearing, and which were the subject of a "meet and confer."

A. Luigino's Motion to Compel. Luigino's seeks an Order compelling IBP to allow representatives of Luigino's to enter and inspect certain manufacturing plants which are operated by Specialty Brands, Inc. ("SBI"), a subsidiary of IBP. This request was initially made on January 30, 2001, and encompassed three facilities located in California, New Mexico, and Texas. On February 21, 2001, IBP objected to the scope of the inspections, and also inquired as to what information Luigino's was seeking through the inspections, and what experts it intended to participate in the plant tours. Luigino's did not respond to IBP's request for such information. In fact, according to IBP, Luigino's did not raise the issue of the inspections again until May 18, 2001. At that time, however, the parties were still unable to settle the dispute. We note, though, that Luigino's did not previously seek this Court's assistance on the issue, even though the parties have appeared before this Court on numerous occasions, most recently on June 14, 2001, in regard to a previous Motion by IBP to compel discovery.

Luigino's basis for requesting an inspection of three of SBI's manufacturing facilities is that Robert Peterson ("Peterson") and Larry Shipley ("Shipley"), who are representatives of IBP, toured

one of Luigino's production facilities, which was located in Jackson, Ohio, in 1998. In part based upon those visits, Luigino's has alleged that IBP misappropriated the manufacturing process for Luigino's "Howlin Coyote" line, and employed the knowledge that Peterson and Shipley obtained during the tour in order to launch IBP's own "Jose Ole" brand.

IBP responds that Luigino's request to tour SBI's production facilities is merely a "fishing expedition," and stresses the fact that Luigino's has failed to identify any specific trade secret, or manufacturing process, that IBP allegedly could have, or did, misappropriate. At the Hearing, however, Luigino's did, for the first time, identify a kettle, which is apparently an important item in the "Howlin Coyote" manufacturing process, and which it believes qualifies as a trade secret which IBP could have potentially misappropriated. Luigino's also continues to assert that IBP switched its production strategy after Peterson and Shipley toured Luigino's facility and, soon thereafter, introduced its "Jose Ole" brand which, Luigino's contends, is quite similar to its own "Howlin Coyote" line.

Even if we were to accept the proposition that Luigino's does possess a proprietary process which IBP could have misappropriated, we would still deny Luigino's Motion to Compel an inspection of the SBI facilities. Discovery in this case closed on June 30, 2001.

While Luigino's did attempt to secure an inspection of the facilities at issue, within the time for discovery, we are unable to characterize those attempts as other than lackluster. If, as Luigino's now suggests, the visits are critical to its case, we can perceive no reason why it dawdled in seeking the Court's intervention, or why, until the Hearing on this Motion, Luigino's had failed to identify any expert, who was qualified to render an opinion on the similarities between Luigino's and IBP's manufacturing processes.

At the Hearing, Luigino's expressed an intent to have its expert, Gordon Wade ("Wade"), who has provided an opinion concerning the usurpation of a corporate opportunity, tour the facility and opine about the manufacturing process observed. There is no showing, however, that Wade has the expertise to render such an opinion, or that his offering of an opinion, at this late date, would not further extend and delay the pretrial preparation of this case. We are convinced that, should the requested inspection proceed, then Wade would seek to supplement his expert report, thereby engendering more discovery, and a request, by IBP, to supplement their expert disclosures. Such a process is not only prejudicial to IBP, but relegates the Court's Scheduling Order to manipulation of the parties -- a prospect we abhor. If, as Luigino's now suggests, the requested plant visits are critical,

they have impermissibly exalted such visits over the constraints of a workable Scheduling Order. "Time will rust the sharpest sword." Sir Walter Scott, Harold the Dauntless, Cantos I, Stanza 4 (1817). Thus, we deny the Plaintiff's Motion to Compel inspection of these production facilities.

Next, Luigino's seeks the billing statements of Cale Elsten ("Elsten"), IBP's expert on damages, which relate to her work on this case. IBP did not produce these statements because, it contends, the statements were not encompassed within the applicable discovery requests. Although neither of the parties required the other party to produce the billing statements of any of their experts, Luigino's argues that its discovery requests encompassed such statements, and it has also agreed to reciprocally provide its experts' billings statements. While we do not wholly agree that Luigino's discovery requests specifically encompassed the requested billing statements, as a practical matter, such information will be revealed at the Trial, and should be disclosed now, without prejudice to either party. Thus, to facilitate full and efficient discovery, both parties should reciprocally produce this information, and accordingly, the Plaintiff's Motion to Compel the billing statements of Elsten is granted.[1]

---

[1]The Plaintiff also raised an issue, at the Hearing, regarding (continued...)

B. IBP's Motion to Compel. The sole issue raised by IBP's Motion to Compel is a document which counsel for IBP viewed during a deposition of Jeno Paulucci ("Paulucci"), on June 15, 2001, and which IBP believes is covered by a previous Order of this Court. Nonetheless, Luigino's has refused to produce the document.

The document is a caricature which relates to a transaction between Heinz and Luigino's, in which Luigino's purchased Heinz's "Budget Gourmet" line. In our Order dated July 2, 2001, we ordered Luigino's to produce documents related to the Budget Gourmet transaction. See, Luigino's v. IBP, Order, at 4, Civ. No. 00-1246 (July 2, 2001)[Docket No. 112]. The caricature is part of the "Budget Gourmet" transaction, and was, therefore, directed to be produced by our prior Order. Luigino's opposes production because the caricature is merely the vehicle of a joke which carries no substantive meaning. This, however, is a discovery dispute, and not a challenge to the document's admissibility at Trial. What

(...continued)
a document bearing Bates number PWC 0302. Luigino's contends that this document is believed to have year ending financial information, which was compiled by IBP, and which contradicts other information generated by IBP and supplied to Luigino's. As the issue was not fully briefed for the present Motion to Compel, we are unable to address the dispute on an informed basis. Moreover, it appears that the parties have not conducted an adequate "meet and confer" so as to attempt a resolve of the dispute without Court intervention. Therefore, we remand the issue of PWC 0302 to the parties to conduct a "meet and confer." If they are still at an impasse, they should return to the Court promptly.

weight the document might ultimately carry is largely unrelated to its relevance for discovery purposes. There being no showing that the document is privileged, or confidential, it must be produced.[2] Therefore, we grant IBP's Motion to Compel.

Finally, the parties noted, at the Hearing, that they are in disagreement over the scope of our Order of July 2, 2001, insofar as it compels the production of the documents contained on the privilege log relating to William Hippee ("Hippee"). IBP contends that it is entitled to all of the documents, on the privilege log, which were generated during the time frame that Peterson was on Luigino's Board of Directors. In contrast, Luigino's argues that some of the documents on the log, such as a "shareholder control agreement," were exchanged solely between Hippee and Paulucci, and were not distributed to any of the Board Members, and are wholly unrelated to this litigation. Therefore, Luigino's asserts that it should not have to produce such documents.

As we expressed in our Order of July 2, 2001, "[w]e cannot conceive of a way that Peterson can effectively defend himself,

[2]Given the fact that, without apparent objection, the caricature was videotaped, during the referenced deposition, we plainly do not understand the objection now raised. The videotape did not render a clear depiction of the caricature, and a clearer photograph is needed, but having allowed the previous video recording of the caricature, we find Luigino's current protestations to be unconvincing.

unless he has access to the documents that others, who served with him on the Board of Directors, were able to review." Id. at 11. This statement would include Paulucci, who we understand to have been a member of the Board. With this caveat in mind, we direct the parties to "meet and confer" concerning the documents at issue. Luigino's should produce any of the documents, which are relevant to this lawsuit, and which were shared with **any** member of Luigino's then existing Board of Directors. If the parties are still at an impasse on this issue, the Court will conduct an in camera review of the remaining documents, so as to assure that other documents, wholly unrelated to this litigation, are not, needlessly, produced.

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiff's Motion to Compel [Docket No. 115] is GRANTED in part, and DENIED in part, as more fully outlined in the text of this Order.

2. That the Defendants' Motion to Compel [Docket No. 119] is GRANTED.

3. That the parties should "meet and confer" regarding the document identified as PWC 0302, and as to the William Hippee privilege log documents.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE